# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| HAMILTON WELL SERVICE, LLC | § | CASE NO. 16-33058 |
|     Debtor | § | (Chapter 7) |
| | § | JUDGE JONES |

_____

| | | |
|---|---|---|
| RODNEY TOW, TRUSTEE | § | |
|     Plaintiff | § | |
| | § | |
| VS. | § | ADVERSARY NO. 18-_____ |
| | § | |
| BRETT D. JENSEN, THE ESTATE | § | |
| OF GERALD L. JENSEN, COLLEEN | § | |
| JENSEN, JCP LEASING, LLC, | § | |
| CROFF OIL COMPANY, THRIFT | § | |
| OPPORTUNITY HOLDINGS, LP., | § | |
| MCP LEASING, LLC, HMS TEXAS | § | |
| HOLDINGS, LLC, JENSEN | § | |
| OPPORTUNITY MANAGEMENT, | § | |
| LLC, JENEX PETROLEUM | § | |
| COMPANY, JCP ENERGY SERVICES, | § | |
| JENCO PETROLEUM | § | |
| CORPORATION, BRETT JENSEN | § | |
| TRUST, CHRISTOPHER JENSEN | § | |
| TRUST AND TORO OPERATING | § | |
|  COMPANY, INC. | § | |
|     Defendants | § | |

## Trustee's Complaint

**TO THE HONORABLE DAVID JONES, UNITED STATES BANKRUPTCY JUDGE:**

Rodney Tow, Trustee and Plaintiff herein, files this Complaint against Brett D. Jensen, the Estate of Gerald L. Jensen, Croff Oil Company, Inc., Colleen Jensen, individually and as Independent Executor an potential beneficiary of the Estate of Gerald L. Jensen, Jenco Investments Partnership, Thrift Opportunity Holdings, JCP Leasing, LLC, Christopher Jensen

Trust, Jenex Petroleum Company, Jensen Opportunity Management, LLC, Brett Jensen Trust, MCP Leasing, LLC, HMS Texas Holdings, LLC, and Toro Operating Company, Inc., Defendants, and in support thereof would show this Court as follows:

## I.
## Jurisdiction and Venue

1.      This Court has jurisdiction pursuant to 28 U.S.C. §1334.

2.      Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

3.      This is a core proceeding pursuant to 28 U.S.C. §§157(b)(2)(A), (E), (F), (H), (K), and (O).

4.      The Plaintiff consents to the entry of final orders or judgment by the Bankruptcy Court pursuant to Federal Rule of Bankruptcy Procedure 9027(a)(1) and Local Bankruptcy Rule 7008-1.

## II.
## Parties

5.      The Trustee may be served through his Counsel of Record, Julie M. Koenig, Cooper & Scully, PC, 815 Walker St., Suite 1040, Houston, Texas 77002, Julie.Koenig@cooperscully.com.

6.      Defendant Brett D. Jensen may be served through his Counsel of Record, Steven D. Shurn, Hughes Watters Askanase, LLC, 1201 Louisiana, 28th Floor, Houston, Texas 77002; SShurn@hwallp.com.

7.      Defendant The Estate of Gerald L. Jensen may be served through its Independent Executor Colleen Jensen's Counsel, Joseph C. Sleeth, Jr., 1301 McKinney, Ste.5100, Houston, Texas 77010.

8.      Defendant Colleen Jensen may be served at 14 Hammock Dunes Place, Spring, Texas 77389 with a copy to her Counsel,  Joseph C. Sleeth, Jr., 1301 McKinney, Ste. 5100, Houston, Texas 77010.

9.      Defendant JCP Leasing, LLC may be served through its Registered Agent, Lawyer's Aid Service, 408 West 17th Street, Suite 101, Austin, Texas 78701.

10.      Defendant Croff Oil Company may be served through its Registered Agent, Lawyer's Aid Service, 408 West 17th Street, Suite 101, Austin, Texas 78701.

11.      Defendant Jenco Investments Partnership may be served through its Managing Partner, Colleen Jensen, 14 Hammock Dunes Place, The Woodlands, Texas 77389.

12.      Defendant Thrift Opportunity Holdings, LP may be served through its Registered Agent, Lawyer's Aid Service, 408 West 17th Street, Suite 101, Austin, Texas 78701.

12.      Defendant MCP Leasing, LLC may be served through its Registered Agent, HMS Texas Holdings, LLC, 9595 Six Pines Dr., Ste. 8210, The Woodlands, Texas 77380.

13.      Defendant HMS Texas Holdings, LLC may be served through its Registered Agent, Colleen Jensen, 9595 Six Pines Dr., Ste. 8210, The Woodlands, Texas 77380.

14.      Defendant Jensen Opportunity Management, LLC may be served through its Registered Agent, Lawyer's Aid Service, 408 West 17th Street, Suite 101, Austin, Texas 78701.

15.      Defendant Jenex Petroleum Company may be served through its Registered Agent, Brett Jensen, 9595 Six Pines Drive, Suite 8210, The Woodlands, Texas 77380.

16.      Defendant JCP Energy Services, LLC may be served through its Registered Agent, Lawyer's Aid Service, 408 West 17th Street, Suite 101, Austin, Texas 78701.

16.      Defendant Jenco Petroleum Corporation may be served through its Registered Agent, Lawyer's Aid Service, 408 West 17th Street, Suite 101, Austin, Texas 78701.

17.     Defendant Brett Jensen Trust may be served co-trustee, Christopher Jensen, 14 Hammock Dunes Place, Spring, Texas 77389.

18.     Defendant Christopher Jensen Trust may be served through its co-trustee, Brett Jensen, 9595 Six Pines Drive, Suite 8210, The Woodland, Texas 77380.

19.     Defendant Toro Operating Company, Inc. may be served through its registered agent, Christopher J. Jensen, 1001 Almont Place, Midland, Texas 79705.

### III.
### History and Background

20.     Since the early 2000s, Defendants Brett Jensen, Gerald Jensen and Colleen Jensen (collectively the "Jensens") created a multitude of companies to operate in the oil and gas business.

21.     On December 23, 2013, the Jensens formed JCP Leasing, LLC ("JCP Leasing") as a Texas limited liability company.

22.     On December 30, 2013, the Jensens formed Hamilton Well Service, LLC (the "Debtor") also as a Texas limited liability company.   The Debtor and JCP Leasing operated collectively as "Hamilton Energy Group" using this name on websites, letterheads and other documents.

23.     On or about December 27, 2015, JCP Leasing entered into a Master Lease Agreement with M/G Finance Co., Ltd. ("M/G Finance") to consolidate multiple equipment lease agreements it had with M/G Finance.   Defendant Brett Jensen executed the Master Lease Agreement as managing member of JCP Leasing.   The leased equipment consisted primarily of oilfield workover rigs with related equipment, trucks and trailers (the "M/G Finance Equipment").

24. Pursuant to the terms of the Master Lease Agreement, JCP Leasing could only sublease or lend the equipment to the Debtor without prior written consent by M/G Finance. The Debtor was a guarantor on the Master Lease Agreement.

25. The rent due under the Master Lease Agreement was:

    a. $100,000 per month, including 8.25% Texas sales tax for months 1 through 6;

    b. $801,835.72 per month, including 8.25% Texas sales tax for months 7 through 42; and

    c. $150.00 per month per lease as an administration fee.

26. Also in 2015, JCP Leasing and the Debtor entered into an Oil Service Equipment Lease whereby, upon information and belief, the Debtor was subleasing not only the M/G Finance Equipment but also "purchasing" miscellaneous parts necessary to operate the workover rigs.

27. The rent due under the Oil Service Equipment Lease was $973,126.79 per month, which included $135,000.00 per month for the "purchased" parts.

28. The business purpose of the Debtor was to operate "the largest fleet of Cooper Workover Rigs in the State of Texas" and the business included workovers, completion, and plug and abandonment services for oil and gas wells in the State of Texas.

29. The Debtor maintained leased properties ("Yards") in Bryan, Victoria, Kilgore and Pearsall, Texas.

30. Although the Debtor allegedly leased the workover rigs, vehicles and other equipment from JCP Leasing, it would order base beams used as a mounting and guying platform for workover rigs from, for example, Guice Engineering, Inc. While these beams were

ordered by the Debtor, invoiced to the Debtor, and shipped to the Debtor, the actual checks to pay the invoices often came from JCP Leasing.

31. On December 8, 2014, the Debtor executed an Accounts Receivable Financing Agreement (the "First Financing Agreement") with Defendant Croff Oil Company ("Croff").   Croff is another company owned by Defendant Gerald Jensen.

32. Under the terms of the First Financing Agreement, Croff would factor up to $500,000 in the Debtor's receivables at 80% of value plus a $500.00 per quarter administrative fee.

33. Upon information and belief, Gerald Jensen, a Director of Croff, had access to the Debtor's bank account and the authority to withdraw the funds from any pledged receivable deposited into the Debtor's account.   Upon information and belief, Gerald Jensen and/or Croff did withdraw funds from the Debtor's account.

34. Upon information and belief, a total of $2,843,147.98 in accounts receivable were factored with Croff but the Debtor only received $1,702,488.95.   However, pursuant to the terms of the First Factoring Agreement, the Debtor should have received $2,275,488.38.

35. The First Financing Agreement was extended until July 31, 2015, at which time all amounts due Croff on August 31, 2015, would be reduced to a promissory note and all receivables through July 31, 2015 would be assigned to Croff.

36. In actuality, the Debtor executed four promissory notes to Croff dated March 31, 2015, May 22, 2015, September 30, 2015, and October 9, 2015, for a total of $1,729,161.00. According to the proof of claim filed in the Debtor's bankruptcy case, Croff is claiming the Debtor still owes it $846,285.21 in principal and interest as of the petition date.

37.     On September 30, 2015, the Debtor executed an Accounts Receivable Financing Agreement (the "Second Financing Agreement") with Defendant Thrift Opportunity Holdings, LP ("Thrift") using almost an identical agreement as the one with Croff. Thrift is another company owned by Defendant Gerald Jensen.

38.     Under the terms of the Second Financing Agreement, Thrift would factor up to $1,500,000 in the Debtor's receivables at 80% of value plus a $5,000.00 per quarter administrative fee.

39.     Gerald Jensen, as the designated manager of Thrift, had access to the Debtor's bank account and the authority to withdraw the funds from any pledged receivable deposited into the Debtor's account.

40.     The Second Financing Agreement was terminated on May 12, 2016, and all receivable checks were to be deposited directly into Thrift's account.

41.     Upon information and belief, a total of $6,660,732.15 in accounts receivable were factored with Thrift but the Debtor only received $2,444,160.17.  However, pursuant to the terms of the Second Factoring Agreement, the Debtor should have received $5,328,585.75.

42.     In addition, the Debtor executed four promissory notes to Thrift dated September 30, 2015, May 22, 2015, February 16, 2016, and April 28, 2016, for a total of $2,655,000.00. According to the proof of claim filed in the Debtor's bankruptcy case, Thrift is claiming the Debtor still owes it $2,801,407.31 in principal and interest as of the petition date.

43.     In addition, from October of 2014 through April of 2016, the Debtor allegedly executed the following:

     a.  Three Promissory notes to Jenco Investments Partnership ("Jenco") in the total amount of $616,000.00;

     b.  Two Promissory Notes to Brett Jensen in the total amount of $417,000.00; and

     c.  Five Promissory Notes to Gerald Jensen in the total amount of $2,091,015.41.

44.    On April 20, 2016, the Debtor, Brett Jensen, Gerald Jensen, Croff, Jenco, and Thrift executed a Security Agreement granting the Jensens and those companies a security interest in all the Debtor's personal property, including general intangibles. This elevated their previously unsecured debt to secured debt.

45.    On April 20, 2016, a UCC-1 Financing Statement was filed with the Texas Secretary of State in an attempt to perfect the secured interest of Gerald Jensen, Croff, Jenco, Thrift and Brett Jensen in all the Debtor's personal assets.

46.    On April 21, 2016, a second UCC-1 Financing Statement was filed with the Texas Secretary of State to change the address of the Debtor, all other information remained the same.

47.    On May 13, 2016, JCP Leasing and the Debtor signed an Agreement on (sic) JCP Leasing LLC Repossessed Equipment from Hamilton Energy Group, LLC (the "Repossession Agreement"). Under the terms of the Repossession Agreement, the Debtor agreed to surrender all the Debtor's equipment and sell the Debtor's intangible assets and name to JCP Leasing for $235,000.00 to allow the Debtor to pay its past due employee's health insurance premiums. It also agreed to rent its Yards in Kilgore, Pearsall and Victoria, Texas to JCP.

48.    On June 16, 2016, (the "Petition Date") the Debtor filed a Voluntary Petition under Chapter 7 of Title 11 of the United States Code.

49.     On January 23, 2017, the following proofs of claim were filed in the Debtor's case:

    a.  Claim Number 37 for Thrift as a secured claim in the amount of $2,801,407.31;

    b.  Claim Number 38 for Croff as a secured claim in the amount of $846,285.21;

    c.  Claim Number 39 for JCP Leasing as an unsecured claim in the amount of $40,780,224.63;

    d.  Claim Number 40 for Jenco as a secured claim in the amount of $662,452.56;

    e.  Claim Number 41 for Brett Jensen as a secured claim in the amount of $449,474.92; and

    f.  Claim Number 42 for Gerald Jensen as a secured claim in the amount of $2,250,197.03.

50.     On December 1, 2017, Defendant MCP Leasing, LLC, ("MCP Leasing"), another Jensen company, filed a Transfer of Claim Agreement thereby transferring Claim Number 27 in the amount of $34,265,475.37 from M/G Finance Co., Ltd. to MCP Leasing.

51.     On the Debtor's Schedules, it claimed to have assets in the amount of $774,113.42 consisting primarily of collectable accounts receivable and liabilities of $14,680,618.33.

52.     The only secured creditors listed were the Jensens and their companies for total secured debt of $8,463,161.00.

53.     Post-petition, the Trustee sent demand letters to the Debtor's counsel for all the Debtor's books and records, computers, receivables and other information.  In response to the demand letters, counsel for the Trustee received twenty-seven boxes of primarily human resources records, excluding any documents pertaining to Brett Jensen or Britthaney Smith, a USB device with limited financial data, and fourteen laptop computers of which twelve had been restored to factory defaults or had the operating systems reinstalled

which destroyed all existing data, one laptop from which the contents had been erased, and one laptop used by an employee with little or no useful information.

54. Further, the principal of the Debtor, its agents or assigneds, cut the lock on the Victoria yard to remove equipment potentially belonging to the Debtor and conducted auctions at all the Yards to sell the equipment.  None of these funds were turned over to the Trustee to administer for the Estate.

55. Finally, upon information and belief, the Jensens and their companies continued to collect the Debtor's accounts receivable post-petition and did not turn the proceeds over to the Trustee to administer in this Estate.

56. Hamilton was a sham company, insolvent from its inception. The Jensen family kept Hamilton insolvent by having it incur debt to Jensen owned sister/parent companies leaving Hamilton with no assets available to pay its creditors while making it possible for millions of dollars of cash to be moved from Hamilton to the parent/sister companies and ultimately to Jensen family members.

## IV.
## Causes of Action

### A.      Joint Enterprise – Direct and Reverse Veil Piercing

57. Trustee incorporates herein, as if fully set forth, the facts and allegations pled in paragraphs 1-56 above.

58. Brett Jensen, Colleen Jensen, and Gerald Jenson, individually and through family trusts, including the Christopher Jensen Trust and the Brett Jensen Trust, organized the Debtor, and other family-controlled entities, including: Croff, Thrift, JCP Leasing, Jenco Investment Partnership, Jenex Petroleum Company, Jensen Opportunity Management, JCP Energy Services, Jenco Petroleum Corporation, MCP Leasing, and HMS Texas

Holdings, LLC (the "Defendant Companies"), as part of a fraudulent scheme to acquire assets and to avoid debts. Defendants organized and operated the Defendant Companies as mere tools or business conduits of other businesses and utilized the Debtor and Defendant Companies with such unity that the separateness of the Defendants and the Debtor ceased.

59. The Defendant Companies are all captured, family-owned businesses, controlled by the Jensen family, individually or through a variety of family trusts, including the Christopher Jensen Trust and the Brett Jensen Trust.

60. The Debtor is also a captured, family-owned and controlled business, owned by Brett Jensen, individually, and the Christopher Jensen Trust.

61. Brett Jensen, individually, also maintains an ownership interest in family companies including the Debtor, JCP Leasing, Jenex Petroleum Corporation, and H&M Land Company.

62. Defendants organized the Defendant Companies to transfer debts and obligations to the Debtor while simultaneously transferring and retaining revenue and assets from the Debtor to other Defendant Companies in an effort to shield the assets and revenue of the Debtor from creditors for the direct personal benefit of the Defendants.

63. While JCP Leasing executed the Master Lease Agreement with M/G Finance, it was actually the Debtor that was liable on the Master Lease Agreement. The Master Lease Agreement was signed by Brett Jensen as managing member of JCP Leasing. JCP Leasing rented equipment from M/G Finance, which JCP Leasing in turn leased to Debtor, ultimately obligating the Debtor to a monthly payment to JCP Leasing of

$973,126.79.  In this manner, JCP Leasing siphoned all revenue from the Debtor, while obligating the Debtor for all liabilities associated with the lease agreements.

64.     While the Debtor ordered equipment, was shipped equipment, and was invoiced for equipment, JCP Leasing claimed ownership in the same equipment.  The Debtor and JCP Leasing commingled ownership of oilfield equipment.   The Debtor and JCP Leasing operated as one entity, the Hamilton Group, utilized the same website, letterhead, and other documents.

65.     Through the execution of the First Financing Agreement and the Second Financing Agreement, the Defendants fraudulently increased the Debtor's liabilities and reduced its assets or revenue through factoring agreements in which Debtor was not appropriately compensated, and which benefitted only the Defendants. The beneficiaries of the First Financing Agreement and the Second Financing Agreement were Croff and Thrift, Defendant Companies owned by the Jensen family, which enjoyed access to the Debtor's bank accounts by virtue of comingled management and ownership. Defendants Brett Jensen, Colleen Jensen, and Gerald Jensen, either individually or through their Defendant Companies and trusts, utilized the First Financing Agreement and Second Financing Agreement as a guise to comingle the assets and liabilities of the Debtor and their Defendant Companies in order to increase the Debtor's liabilities while simultaneously transferring the Debtor's assets to shield the same from the reach of creditors.

66.     Through their disregard of corporate formalities and the comingling of assets, liabilities, revenues and debts across the Defendant Companies and to/from the Debtor, the Defendants manipulated the financial condition of the Debtor so that it remained in a permanent state of insolvency.

67. The Defendants compounded these actions by executing subsequent documents, such as the Repossession Agreement, transferring equipment and intangible assets from the Debtor to JCP Leasing, and the execution of Security Agreements and Financing Statements between the Debtor, Brett Jensen, Gerald Jensen, Croff, Jenco, and Thrift mere months prior to the filing of Debtor's Voluntary Petition.

68. These actions were accomplished by virtue of Gerald Jensen's signature authority on behalf of Croff and Thrift, and Brett Jensen's ownership in the Debtor, JCP Leasing, Jenex Petroleum Corporation, and H&M Land Company.

69. The comingled, fraudulent nature of these entity relationships is exhibited through their shared offices, shared officers, shared employees, and shared bookkeeping.

70. The Debtor was organized as a shell for the rest of the Defendants' organizations and businesses for the purpose and intent to defraud the Debtor's creditors and confer personal benefit to the Defendants. The Debtor was essentially insolvent from inception, owned no assets, yet owed $79,000,000.00 to the Defendants—Jensen family and Jensen family companies. The Defendants utilized Security Agreements and Financing Statements to defraud the Debtor's creditors and confer personal benefit to themselves, exhibiting and resulting in a preference to insider Defendants over other creditors.

71. The Debtor and the Defendant Companies utilized their corporate structures for illegitimate purposes to shield the Defendants' fraud, the Debtor's existing obligations, confer personal financial benefit to the Defendants, and circumvent existing rules and laws protecting the Debtor's creditors.

72. Through the actions described above, Defendants funneled profits out of the Debtor through use of Croff, Thrift, and JCP Leasing, creating a situation where as much as

$5,000,000.00 of creditor claims have gone unpaid.  Defendants have continued and exacerbated this fraud through their failure to pay for Debtor's employee health insurance, the granting of ridiculously high salaries to insiders, preference payments to insiders, and fraudulent transfers to insiders.

73.     The purpose of the Debtor's existence was to enrich the Defendants to the detriment of the Debtor's creditors.  To achieve this purpose, the Debtor wiped its computers pre-petition, refused to turn over accounting records, passwords, or access to cloud-based computing, and otherwise erased or obfuscated some evidence of the Defendants' fraud. Finally, the Defendants ultimately recreated Debtor's business under another name, using the Debtor's assets.

74.     These acts establish the true nature of the relationship between the Defendants and between the Debtor and the Defendants as a joint enterprise organized and intended to deprive the Debtor's creditors and confer benefit to the Defendants.

### B.     Joint Venture or Joint Enterprise

75.     Trustee incorporates herein, as if fully set forth, the facts and allegations pled in paragraphs 1-74 above.

76.     Through multiple agreements between the Defendants—the Jensens, individually, as well as the family business named as Company Defendants—and the Debtor, the Defendants are jointly liable with the Debtor as participants in a joint venture or joint enterprise with the purpose of enriching the Defendants to the detriment of Debtor's creditors.

77.     This common purpose, community of interest, and equal right of control between the Defendants is exhibited by Brett Jensen's management and/or ownership position in the various Defendant Companies and the Debtor and the corresponding use of those

positions to accomplish actions enriching the Defendants to the detriment of the Debtor's creditors.

78. The Defendants executed a multitude of agreements between themselves and the Debtor in order to orchestrate their overall purpose, including multiple loans between Defendant Companies, the First Financing Agreement and the Second Financing Agreement, the Master Lease Agreement, the Oil Service Equipment Lease, promissory notes, UCC-1 Financing Statements, and the Repossession Agreement.

79. The Defendants collectively utilized the corporate forms of the Company Defendants and the Debtor as a fiction for the actual purpose of perpetrating fraud on the Debtor's creditors by avoiding existing legal obligations and misdirecting assets to insider Defendants.

### C.   Alter Ego

80. Trustee incorporates herein, as if fully set forth, the facts and allegations pled in paragraphs 1-79 above.

81. Defendants and the Debtor are each the alter egos of one another such that liability must be imposed on the Defendants with respect to the obligations of the Debtor.  The course of conduct between the Defendants and the Defendants and the Debtor reveal a complete failure to follow corporate formalities, maintain separate corporate and individual property, and differentiate control of financial ownership or interest over the Defendants, the Debtor, and their assets and/or liabilities.  The Defendant Companies and the Debtor have been used for personal gain through the fraudulent avoidance of the Debtor's obligations.

82.     The nature of the Defendants and the Debtor's relationships as alter egos is shown through the commingling of funds, transfer of liabilities or obligations, and payment of corporate debts with allegedly separate, or "outside" funds.

83.     For instance, while the Debtor contracted to purchase oilfield service equipment, JCP Leasing actually paid for the same despite using the Debtor's name as the purchaser, despite the Debtor receiving the invoice(s) for such equipment, and despite the Debtor actually receiving such equipment.   JCP Leasing later claimed ownership of such equipment.   The Debtor and JCP Leasing operated as one entity, the Hamilton Group, utilized the same website, letterhead, and other documents.

84.     Likewise, the First Financing Agreement and the Second Financing Agreement between the Debtor and Croff and Thrift, Defendant Companies owned by the Jensen family, constituted nothing more than methods for the Defendants to increase their own personal financial gain while simultaneously increasing the liabilities of the Debtor to avoid the Debtor's obligations to true creditors and misdirect remaining assets to insiders.

85.     The ownership of the Debtor and the Defendant Companies by the Jensen family, whether by Brett Jensen, individually, Colleen Jensen, individually, Gerald Jensen or his estate, or Jensen family trusts including the Christopher Jensen Trust and the Brett Jensen Trust, created a situation whereby the Defendants were able to engage in the constant distribution and redistribution of company funds between the Defendant Companies and the Debtor in order to gain personal benefit to the detriment of the Debtor's creditors.

86.     Through the Oil Service Equipment Lease, the First Financing Agreement, the Second Financing Agreement, Repossession Agreement, various loans, and other representations, the Defendants indicated that they would financially support the Debtor.

87.   Despite these representations and agreements, Defendants engaged in the diversion of Debtor's revenue and assets to the Defendants for their personal gain and use.

88.   The Defendants utilized the Oil Service Equipment Lease, the First Financing Agreement, the Second Financing Agreement, Repossession Agreement, various loans, and other representations to transfer the assets from the Debtor while saddling it with obligations and debts and intentionally undercapitalizing the Debtor such that it was insolvent from its inception and destined for bankruptcy.

89.   Ultimately, Defendants elected to shutter the Debtor, file a Voluntary Petition in the Debtor's name, transfer all possible assets from the Debtor to the Defendants, and begin again with a new corporate fiction, MCP Leasing, LLC.

90.   Defendants and Debtor all serve as the alter ego of one another, collectively designed to perpetrate a fraud on the Debtor's creditors and to unjustly enrich the Defendants.

### D.   Breach of Fiduciary Duty

91.   Trustee incorporates herein, as if fully set forth, the facts and allegations pled in paragraphs 1-90 above.

92.   Gerald Jensen, Brett Jensen, and Colleen Jensen each breached their fiduciary duty to the Debtor through fraudulent conveyances, insider preferences, and intentional avoidance of the Debtor's obligations in pursuit of personal enrichment.

93.   Gerald Jensen, Brett Jensen, and Colleen Jensen, through their ownership, management, and control of the Debtor, created a situation in which the Debtor permanently remained insolvent, and consequently owe the creditors of the Debtor a fiduciary duty.   As fiduciaries of the Debtor, Gerald Jensen, Brett Jensen, and Colleen Jensen owed the duty of utmost good faith and fair dealing.

94. Through various illicit transfers from the Debtor to themselves, other Defendants, and other insiders prior to the Debtor's creditors, Gerald Jensen, Brett Jensen, and Colleen Jensen breached their fiduciary duty to the creditors of the Debtor.

95. Gerald Jensen, Brett Jensen, and Colleen Jensen transferred funds from the Debtor to themselves and the other Defendant Companies, when such funds otherwise would have been provided to the Debtor's companies, caused the Debtor to suffer damages as it is unable to fulfill its obligations to its creditors.   The transfer of these funds was accomplished through the interplay between the Defendant Companies and the Debtor, and the execution of the agreements made between them, including the Oil Service Equipment Lease, the First Financing Agreement, the Second Financing Agreement, Repossession Agreement, various loans, and other representations.

96. Because of Gerald Jensen, Brett Jensen, and Colleen Jensen's breach of fiduciary duty, the Debtor has been damaged in an amount of up to $5,000,000.00, which represents the claims of creditors that the Debtor has been unable to pay as a result of the breach.

### E.    Constructive Trust and/or Equitable Lien

97. Trustee incorporates herein, as if fully set forth, the facts and allegations pled in paragraphs 1-96 above.

98. Defendants have been wrongfully enriched through their acquisition of the Debtor's assets that should rightfully be available to satisfy the claims of creditors.

99. Through fraud and breach of fiduciary duty, the Defendants acquired the Debtor's assets, including revenue, equipment, and other intangible, real, and personal property.

100. Immediately prior to filing Debtor's Voluntary Petition, Gerald Jensen, Croff, Jenco, Thrift and Brett Jensen filed a UCC-1 Financing Statement in an attempt to perfect their

security interests in the Debtor's personal assets.  Similarly, JCP Leasing and the Debtor executed the Repossession Agreement immediately prior the filing of Debtor's Voluntary Petition, whereby the Debtor surrendered all its equipment and intangible assets to JCP Leasing for merely $235,000.00, an unjustifiable foreclosure of Debtor's assets by JCP Leasing.  Upon information and belief, Debtor never received the $235,000.00 payment due from JCP Leasing.

100.    Defendants orchestrated the execution of factoring agreements between the Debtor and Defendant Companies Croff and Thrift (the First Financing Agreement and the Second Financing Agreement), which served no purpose but to enrich the Defendants through the transfer of assets from the Debtor and the transfer of debt to the Debtor.  Despite the terms of these agreements requiring payments to the Debtor, Defendant Companies Croff and Thrift failed to advance funds due under the First Financing Agreement and the Second Financing Agreement.  These factoring agreements were used by the Defendants to generate profit for the Defendant Companies and transfer debt to the Debtor.

101.    Through these actions, the Defendants created a situation wherein they received all profits and assets of the Debtor, elevated their own claim priorities prior the Debtor's bankruptcy, and avoided payment to the Debtor's creditors.  This resulted in unjust enrichment of the wrongdoers: the Defendants engineered a system to benefit themselves to the detriment of the Debtor's creditors.

102.    The Debtor's physical assets, wrongfully transferred to the Defendants were either sold with the proceeds placed in the Trusts or are, upon information and believe, currently situated in a yard leased by either of Defendants MCP Leasing, LLC or HMS Texas Holdings, LLC located in Pearsall, Texas.  Defendants created Defendant JCP Energy

Services in order to wind down the Oil Service Equipment Lease between JCP Leasing and the Debtor, and then formed Defendants MCP Leasing, LLC and HMS Texas Holdings, LLC to acquire Debtor's assets, which are currently believed to be held by MCP Leasing, LLC.

103.   Because of Defendants' actions, a constructive trust and/or equitable lien should be placed on the assets of Defendants MCP Leasing, LLC or HMS Texas Holdings, LLC, the Brett Jensen Trust and/or the Christopher Jensen Trust.

### F.   Usurpation of Corporate Opportunity

104.   Trustee incorporates herein, as if fully set forth, the facts and allegations pled in paragraphs 1-103 above.

105.   Corporate officers and directors are fiduciaries as to the corporation, and as such are under an obligation not to usurp corporate opportunities to obtain personal gain.  As fiduciaries, there may be no conflict between duty to the company and self-interest, as undivided and unselfish loyalty to the corporation is demanded, and utmost good faith in a fiduciary's relation to the corporation is required.

106.   Gerald Jensen, Brett Jensen, and Colleen Jensen, through their ownership, management, and control of the Debtor, were obligated not to usurp corporate opportunities to obtain personal gain.  Both individually, and through the Defendant Companies, Gerald Jensen, Brett Jensen, and Colleen Jensen breached their duty to the Debtor by usurping its corporate opportunities in favor of personal gain.

107.   Rather than contracting directly with vendors, Gerald Jensen, Brett Jensen, and Colleen Jensen entered into the Oil Service Equipment Lease between the Debtor and family company JCP Leasing, to acquire goods and services that Debtor could and should have

acquired directly from a third party.  Instead of contracting directly with a third party, Gerald Jensen, Brett Jensen, and Colleen Jensen utilized their own company, JCP Leasing, as an intermediary through which equipment was re-leased to the Debtor so as to siphon off additional profits at the Debtor's cost.

108.   Gerald Jensen, Brett Jensen, and Colleen Jensen, through Defendant Companies Croff and Thrift, entered into factoring agreements, the First Financing Agreement and the Second Financing Agreement, that benefitted Defendants to the detriment of the Debtor. The financing agreements themselves failed to comply with industry standards, and the Defendants failed to comply with the terms of the financing agreements, advancing funds at their own discretion without adhering to the terms of the financing agreements. Ultimately, the Defendants withheld monies from the Debtor, failing to compensate it as set forth in the financing agreements.

109.   Brett Jensen and Colleen Jensen, through their Defendant Companies, continued to collect the Debtor's accounts receivable post-petition and refused to turn those assets over to the Estate.

110.   Brett Jensen and Colleen Jensen, through their Defendant Companies, trespassed onto the Victoria Yard, cutting the lock, to remove Debtor's assets, and then conducted auctions in an effort to sell such assets.  The automatic stay was not lifted, the Trustee's permission was not obtained, and no funds or assets acquired from the Victoria Yard were turned over to the Trustee to administer for the Estate.

111.   These actions, and others outlined in this Complaint by Gerald Jensen, Brett Jensen, and Colleen Jensen placed personal enrichment above their duty to the Debtor, usurping the Debtor's corporate opportunity, and breaching the fiduciaries' duties to the Debtor.

### G.      Unjust Enrichment

112.    Trustee incorporates herein, as if fully set forth, the facts and allegations pled in paragraphs 1-111 above.

113.    JCP Leasing, Croft, Thrift, MCP Leasing, HMS Texas Holdings, and Brett Jensen utilized fraud and/or the taking of an undue advantage to obtain assets and revenue that rightly belonged to the Debtor.

114.    JCP Leasing, Croft, Thrift, MCP Leasing, HMS Texas Holdings, and Brett Jensen fraudulently transferred the Debtor's accounts receivable from the Debtor post-petition and failed to turn over the same to the Trustee to administer for the Estate, instead retaining those assets for their own benefit.

115.    JCP Leasing, Croft, Thrift, MCP Leasing, HMS Texas Holdings, and Brett Jensen obtained assets of the Debtor located in the Victoria Yard through criminal trespass, fraudulent conveyance, and/or conversion, cutting the lock to the property, repossessing the Debtor's assets, and retaining the same for their own benefit, rather than turning them over to the Trustee to administer for the Estate.

116.    JCP Leasing, Croft, Thrift, MCP Leasing, HMS Texas Holdings, and Brett Jensen fraudulently transferred the Debtor's assets to JCP Leasing which either sold the assets and/or transferred the assets to MCP Leasing, LLC, one of the Defendant Companies owned or controlled by Gerald Jensen, Brett Jensen, and Colleen Jensen, for the benefit of the Defendants, and to the detriment of the Debtor, as assets rightfully belonging to the Debtor were no longer available to satisfy the claims of the Debtor's creditors.

117.    From the inception of the Debtor's existence, JCP Leasing, Croft, Thrift, MCP Leasing, HMS Texas Holdings, and Brett Jensen exercised undue advantage over the debtor

through the Defendant Companies and the management, ownership, or control of the Debtor to force the Debtor to enter into the First Financing Agreement, the Second Financing Agreement, the Oil Service Equipment Lease, and the Repossession Agreement.  These agreements were designed and intended to benefit the Defendants to the detriment of the Debtor.  Through these agreements, the Defendants intentionally and continually captured the assets and revenue of the Debtor, rendering it permanently insolvent, depriving the Debtor of the ability to pay its creditors, and financially benefiting the Defendants.

118.    Brett Jensen, Gerald Jensen, Croff, Jenco, and Thrift exercised undue advantage over the debtor through the management, ownership, or control of the Debtor to require the Debtor to execute a Security Agreement granting a security interest in all the Debtor's personal property.   Brett Jensen, Gerald Jensen, Croff, Jenco, and Thrift used this Security Agreement to file a late and untimely UCC-1 Financing Statement with the Texas Secretary of State to secure their antecedent debt.  The use of this undue advantage to secure the antecedent debt financially benefitted Brett Jensen, Gerald Jensen, Croff, Jenco, and Thrift and harmed the Debtor, eliminating its ability to pay the claims of its creditors.

### H.    Fraud and Fraud by Nondisclosure

119.    Trustee incorporates herein, as if fully set forth, the facts and allegations pled in paragraphs 1-118 above.

120.    Gerald Jensen and Brett Jensen materially misrepresented the purpose, status, and condition of the Debtor, falsely conveying that the Debtor was organized for a legitimate business purpose when Gerald Jensen and Brett Jensen knew this to be false, and

intended for other to act on this falsity, rely on it, and act upon it to their financial detriment.

121.   Gerald Jensen and Brett Jensen knew the Debtor to be perpetually insolvent from inception, funded only at the will of the Defendants, knew the profits and assets of the Debtor would be continually withdrawn through the various agreements orchestrated between the Defendants and the Debtor, and knew the Debtor was established solely for the purpose of the Defendants' profit.  If run for a legitimate business purpose, the Debtor could have been profitable.   The Defendants, knowing these facts, induced people to work for the Debtor and invest in the Debtor to their detriment.   The Defendants, knowing these facts, constructed agreements between the Defendant Companies and the Debtor that materially disadvantaged third parties to the benefit of the Defendants.  These acts caused injury to the Debtor through the inability to pay the claims of creditors in an amount of up to $5,000,000.00.

122.   Gerald Jensen and Brett Jensen further concealed the fact that the Debtor was not organized for a legitimate business purpose from third parties that were ignorant of this fact, and Gerald Jensen and Brett Jensen intended to induce third parties to invest, conduct business, and gain employment with the Debtor through the assumption and understanding that the Debtor was a legitimate business entity.  By concealing and failing to disclose that the Debtor was, in actuality, organized for the purpose of enriching the Defendants, third parties engaged in business with the Debtor and the Debtor was injured when these third parties sought to be paid by the Debtor as creditors of the Debtor.  The Debtor was injured when up to $5,000,000.00 of creditor claims went unpaid.

## I.      Fraudulent Transfer

123.    Trustee incorporates herein, as if fully set forth, the facts and allegations pled in paragraphs 1-122 above.

124.    Debtor, JCP Leasing, Croff, Thrift, MCP Leasing, LLC, HMS Texas Holdings, and Brett Jensen transferred assets from the Debtor and/or obligated the Debtor with the intent to hinder, delay, or defraud the creditors of the Debtor by: (1) entering into factoring agreements that were not commercially reasonable and removing the profits and assets of the Debtor; (2) engaging in purported factoring yet failing to pay the Debtor the amounts due under the agreement; (3) filing UCC-1 Financing Statements with the intent to defraud creditors by elevating unsecured debt to secured debt prior to filing of the Debtor's Voluntary Petition; (4) intentionally keeping the Debtor involved from its inception, draining its profits and revenue for the Defendants' financial benefit.

125.    The transfers made between the Debtor, Croff, and Thrift were made without Debtor receiving a reasonably equivalent value in exchange for the transfer.

126.    The Defendants intended and knew that the Debtor would incur debts beyond its ability to pay.  This was the purpose of the Debtor: to enrich the Defendants by draining its profits and assets, and encumbering the Debtor with obligations prior to filing the voluntary petition.

127.    Despite intending and knowing the Debtor would incur debts beyond its ability to pay, the Defendants pursued this course of action with the intent and desire that the Debtor incur more obligations and debt while simultaneously transferring all assets and revenue from the Debtor to the Defendants.

### J.     Conversion

128.   Trustee incorporates herein, as if fully set forth, the facts and allegations pled in paragraphs 1-127 above.

129.   Thrift and Croft unlawfully appropriated property to which the Debtor had a possessory right when they retained accounts receivable of the Debtor in excess of the amounts specified in the First Financing Agreement and the Second Financing Agreement.

130.   JCP Leasing unlawfully appropriated property to which the Debtor had a possessory right when it foreclosed on the assets of the Debtor and either sold the assets or transferred the same to MCP Leasing, LLC and/or HMS Texas Holdings, LLC.

131.   Gerald Jensen, Brett Jensen, and Colleen Jensen, through their Defendant Companies, unlawfully appropriated property to which the Debtor had a possessory right when they unlawfully removed equipment from the Victoria Yard.

### K.     Preference

132.   Trustee incorporates herein, as if fully set forth, the facts and allegations pled in paragraphs 1-131 above.

133.   11 U.S.C. Section 547(b) states:

(b)  Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property --

> (1)     to or for the benefit of a creditor;

> (2)     for or on account of an antecedent debt owed by the debtor before such transfer was made;

> (3)     made while the debtor was insolvent;

> (4)     made --

>> (A)     on or within 90 days before the date of the filing of the petition; or

> (B)    between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5)    that enables such creditor to receive more than such creditor would receive if --
>
> > (A)    the case were a case under chapter 7 of this title;
> >
> > (B)    the transfer had not been made; and
> >
> > (C)    such creditor received payment of such debt to the extent provided by the provisions of this title."

134.    The promissory notes from the Debtor to Croff, Thrift, Jenco, Brett Jensen and Gerald Jensen were executed between October of 2014 and April of 2016. The indebtedness to JCP Leasing was for "past due lease payments."

135.    The Security Agreement granting a secured interest in all the Debtor's assets for the benefit of Croff, Thrift, JCP Leasing, Jenco, Brett Jensen and Gerald Jensen was executed on April 20, 2016.

136.    The UCC-1 Financing Statements to perfect the secured interests of Croff, Thrift, JCP Leasing, Jenco, Brett Jensen and Gerald Jensen in all the Debtor's assets were filed with the Texas Secretary of State on April 20 and 21, 2016.

137.    The creation of the Security Agreement and the filing of the UCC-1 Financing Statements were performed to perfect a security interest in all the Debtor's assets for the benefit of Croff, Thrift, JCP Leasing, Jenco, Brett Jensen and Gerald Jensen on account of alleged antecedent debts allegedly owed by the Debtor.

138.    The creation of the Security Agreement and the filing of the UCC-1 Financing Statements were performed while the Debtor was insolvent.

139.    The Debtor filed its Chapter 7 Voluntary Petition on June 16, 2016.

140.    The creation of the Security Agreement and the filing of the first UCC-1 Financing Statement were performed 57 days prior to the bankruptcy filing.

141.    The creation of the Security Agreement and filing of the first UCC-1 Financing Statement would enable Croff, Thrift, JCP Leasing, Jenco, Brett Jensen and Gerald Jensen to receive more than they would receive if the transfer had not been made.

142.    Therefore, pursuant to 11 U.S.C. §547(b), the creation and perfection of the secured interests in the Debtor's assets by Croff, Thrift, JCP Leasing, Jenco, Brett Jensen and Gerald Jensen constitute preferences and may be avoided by the Trustee.

### M.    Damages

143.    Trustee seeks damages as outlined above, in addition to reasonable attorney's fees, court costs, and pre- and post-judgment interest as allowed by law.

144.    Trustee seeks monetary relief in excess of $1,000,000.00

### N.    Conclusion & Prayer

**WHEREFORE, PREMISES CONSIDERED,** the Trustee requests that the Court render a judgment against Brett D. Jensen, the Estate of Gerald L. Jensen, Croff Oil Company, Inc., Colleen Jensen, individually and as Independent Executor an potential beneficiary of the Estate of Gerald L. Jensen, Jenco Investments Partnership, Thrift Opportunity Holdings, JCP Leasing, LLC, Christopher Jensen Trust, Jenex Petroleum Company, Jensen Opportunity Management, LLC, Brett Jensen Trust, MCP Leasing, LLC, HMS Texas Holdings, LLC, and Toro Operating Company, Inc., and award the Trustee damages as requested herein, attorney's fees, pre-judgment and post-judgment interest and court costs, and for such other and further relief at law and in equity that this Court deems just.

Respectfully submitted this 15th day of June, 2018.

**COOPER & SCULLY, PC.**


By:   /s/  Julie M. Koenig_____

          JULIE M. KOENIG
          Texas Bar No. 14217300
          Southern District No. 10396
          815 Walker, Suite 1040
          Houston, Texas 77002
          713/236-6800 (Telephone)
          713/236-6880 (Telecopier)
          Julie.Koenig@cooperscully.com
          ERIC W. HINES
          Texas Bar. No. 24010107
          Southern District No. 975561
          900 Jackson Street, Suite 100
          Dallas, TX 75202
          214/712-9500 (Telephone)
          214/712-9540 (Telecopier)
          Eric.Hines@cooperscully.com

          **ATTORNEYS FOR THE TRUSTEE**